IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA DeBIASE and JEFF | : | |
| DeBIASE, | : | |
| Plaintiffs, | : | |
| | : | No.  4:06-cv-1278 |
| v. | : | |
| | : | Judge John E. Jones III |
| HERSHEYPARK and HERSHEY | : | |
| ENTERTAINMENT & RESORTS | : | |
| CO. (HERCO), | : | |
| Defendants | : | |

**MEMORANDUM**

November 15, 2007

This is a personal injury action filed by Plaintiffs Patricia DeBiase and her husband Jeff DeBiase.  Before the Court is the motion for summary judgment of Defendant Hershey Entertainment & Resorts Company ("HE&R").[1]  (Doc. 54.) For the reasons that follow, the motion will be granted.

I.     BACKGROUND

In accordance with the standard of review governing motions for summary judgment, the following facts, and any reasonable inference derived therefrom, are viewed in the light most favorable to the non-moving parties, the DeBiases.

---

[1] HE&R, misnamed as HersheyPark and Herco, is the only defendant in this action.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).


This action arises from a trip-and-fall accident that befell Mrs. DeBiase at
HersheyPark on July 11, 2001.  (Def.'s Statement of Undisputed Material Facts
["SUF"], Doc. 55 ¶ 1.)  On that date, Mrs. DeBiase was walking toward the exit of
the amusement park with her husband, daughter, and son, and carrying her
grandson, when she tripped as a result of catching the toe of one of her shoes.
(SUF ¶¶ 1, 3, 9.)  Mrs. DeBiase fell to her knees, causing serious and permanent
injuries to her knees and great pain and suffering.  (SUF ¶ 1; Amend. Compl., Doc.
10-6 ¶¶ 1, 12.)

It is uncertain what Mrs. DeBiase tripped over.  None of Mrs. DeBiase's
family who were present at the time of the accident saw what Mrs. DeBiase tripped
over.  (SUF ¶¶ 9-15.)  In an e-mail that Mrs. DeBiase sent to HE&R on July 16,
2001, Mrs. DeBiase states that "I tripped and fell to the ground over one of the
three or four small metal ground covers that were almost at the exit gates, just a little
ways down in the park from the gate."  (Def.'s Ex. A, Doc. 54-3.)

Plaintiffs were initially represented by counsel in this action.  Plaintiffs'
counsel commissioned Stephen Fournier, a liability expert of the forensic
engineering firm Robson Lapina, to investigate the accident.  (*See* Doc. 69-5.)

2

Fournier's September 17, 2001 report states that "[a]s DiBiasi [sic] approached a ramp made of brick pavers, she tripped on a raised edge of a concrete curb"; that "Patti DiBiasi [sic] tripped and fell because of the inconspicuous exposed vertical edge between the asphalt walkway and the curb"; and that "[t]he exposed edge was inconspicuous and dangerous in a manner that caused Patti DeBiase to fall." (Def.'s Ex. C, Doc. 54-3 at 1, 2, 6.)  The report notes the existence of "four water gate valve boxes" located 22 to 75 inches from the curb, but does not indicate that Mrs. DeBiase tripped over these boxes or that they caused Mrs. DeBiase's fall. (*Id.* at 2.)

On February 8, 2003, Dr. Teofilo A. Dauhajre, M.D. sent a letter to the Plaintiffs' counsel reporting the conclusions of his May 1, 2002 evaluation of Mrs. DeBiase.  (Doc. 70-2.)  Dr. Dauhajre's February 8 letter states that Mrs. DeBiase "while at Hershey Park in Pennsylvania, tripped on a water meter cover sticking out."  (*Id.* at 1.)  On April 1, 2003, Dr. Dauhajre sent another letter to the Plaintiffs' counsel, as an addendum to his February 8 letter, based on a reevaluation of Mrs. DeBiase conducted on March 17, 2003.  Dr. Dauhajre's April 1 letter states:

> At this time the patient [Mrs. DeBiase] states that she
> presents for reevaluation.  Furthermore, the patient states
> that the history of the fall down accident of 7/11/01 was
> inaccurate as per my report of 2/8/03.  The patient states
> that it was dark at the time of the fall of 7/11/01 and she

3

> assumed that she tripped over a raised water meter cap.
> According to the patient, she revisited the site of the fall
> down and states that she tripped on an uneven, raised
> curb resulting in injuries to both knees.  Because of the
> darkness at the time of the fall and close proximity of the
> water caps to the curb, the patient states that she
> erroneously concluded that the fall was as a result of the
> water meter caps versus the uneven, raised curb.  It was
> obvious on her re-expression at the accident site that she
> fell over the uneven, raised curb.

(Doc. 70-3 at 1.)

The Plaintiffs' amended complaint, filed by their counsel on October 16, 2003, states that "as Patricia DeBiase approached the main exit to the park, she tripped over uneven and unsafe grade, thereby causing her to fall."  (Amend. Compl., Doc. 10-5 ¶ 4.)  The complaint further alleges that "the end of the walkway contains an inconspicuous exposed vertical edge between the asphalt walkway and the curb at the end of the walkway" (*id.* at ¶ 8) and that "[t]he raised edge and curb that caused Plaintiff, Patricia DeBiase, to fall was ... a dangerous condition" (*id.* at ¶ 11.)  The complaint does not mention the water valve covers.

In its interrogatories to the Plaintiffs, HE&R asked the Plaintiffs to "describe fully and completely where, when and how the accident occurred, stating all events relating to the accident in sequential order, and describing the parts of your body that made contact with any parts of or objects near the accident site, and the

sequence in which contact occurred."  (Def.'s Ex. F, Doc. 54-3 at 3.)  Mrs.

DeBiase's answer, provided on April 11, 2007 states, in relevant part:

> As I approached the main exit to the Park, I tripped and
> fell to the ground, landing directly on my knees, near the
> exit gates to the Park.  After falling on my knees, I turned
> and looked back, and noticed four small metal ground
> covers on the ground, near the exit to the gates....
> Subsequently, I learned that in the area immediately
> proximate to the small metal covers I noticed on the
> ground behind me when I fell, a raised curb was also in
> the path of my travel. Subsequent inspection of the raised
> curb by a professional engineer, revealed that it created an
> inherently dangerous tripping hazard, resulting in my
> fall, and injuries to my knees, later requiring surgery.

(*Id.*)  The Plaintiffs' answers to HE&R's interrogatories were prepared by their

counsel, but were verified by Mrs. DeBiase.  (*Id.* at 12.)

On April 11, 2007, the Plaintiffs' attorney moved to withdraw as their

counsel in this action, citing a deterioration of his relationship with Mrs. DeBiase.

(Doc. 33.)  Mrs. DeBiase acknowledge her strained relationship with counsel, but

requested that he not be dismissed because neither she nor her counsel could find

another attorney to take the case.  (Doc. 40.)  After a hearing on the matter,

counsel's motion to withdraw was granted on April 25, 2007.  (Doc. 43.)

At her June 20, 2007 deposition, Mrs. DeBiase, now *pro se*, testified that, at

the time of the accident, she was wearing open-toed leather flip-flips with two-inch

thick rubbers soles, and that as she was exiting the park, she tripped by catching

the toe of one of her shoes.  (Dep. of Patricia DeBiase, Doc. 54-4, at 18:20-20:8,

31:17-32:8.)  Mrs. DeBiase then testified as follows:

> Q:   Let me ask you, first of all, do you know what you tripped on?
>
> A:   Well, I think it was the curb, or could have been the meter. But there was an investigator that went up and determined whatever he determined, I am sure you have the paperwork, that it was the curb.
>
> Q:   So –
>
> A:   They were both together.
>
> Q:   I just want to be clear.
>
> A:   Uh-huh.
>
> Q:   You are saying that you are not sure whether you tripped on the curb, is that right?
>
> A:   No, I don't know.
>
> Q:   Okay.  It could have been the meter that you tripped on?
>
> A:   Could have been either, not sure.
>
> Q:   And you were relying on the – your investigator to figure that out?
>
> A:   Yes, because I don't know, but I know that it was right there, that area.

Q:    Just to be clear, are you talking about Stephen
      Fournier, is that the investigator.

A:    I don't know.  I don't know his name, to be
      honest with you.

Q:    Is the company Robson Lapina?

A:    Yes.

Q:    As that – to your knowledge, that's the report that
      has been given to us?

A:    Yes.

Q:    Okay.  And just to clarify again, Mr. Fournier, the
      investigator, was not there present at the time that
      you fell?

A:    No, he wasn't.

Q:    Okay.  Where did you land in relation to the meters
      or the curb?

A:    I don't know.  I didn't think of anything at that
      point.  All I thought about was my grandson.  I
      didn't even think about any of it.

(*Id.* at 33:22-35:9.)  At her deposition, Mrs. DeBiase stated that she understood she

was testifying under oath and had sworn to tell the truth (*id.* at 4:17-19) and that she

should tell HE&R's counsel if she did not hear or understand a question (*id.* at 6:7-

11.)  During the deposition, Mrs. DeBiase did not indicate to HE&R's counsel that

7

she did not hear or understand any of the above quoted questions.

Based on these undisputed facts, HE&R submits in support of its motion that "Mrs. DeBiase does not know whether she tripped over one or more small metal covers imbedded in asphalt, or a concrete curb dividing the asphalt from brick-like pavers." (SUF ¶ 5.) In her response to HE&R's statement of undisputed material facts, Mrs. DeBiase agrees with this statement. (Pls.' Response, Doc. 60 ¶ 5.)

Mrs. DeBiase disagrees, however, with HE&R's statement that "Mrs. DeBiase does not know what the toe of her shoe caught on." (SUF ¶ 4.) Mrs. DeBiase states that "I do know what I tripped on. At first, I was not aware that there were not one but TWO hazards at the site, both the water meter covers as well as the curb." (Pls.' Response ¶ 4.) Mrs. DeBiase states that the deposition questions quoted above were "asked in an unclear manner." (*Id.*)

In her brief in opposition to HE&R's motion for summary judgment, Mrs. DeBiase states she does know what she fell on – the metal ground cover – but that her former attorney told her she was incorrect and the concrete curb caused her fall. (Pls.' Opp. Br., Doc. 69 at 12-13.) Mrs. DeBiase maintains that she has consistently "stated since the trip and fall six years ago, that she tripped on the metal round ground cover" and that "nowhere does she say that she tripped over a

curb." (*Id.* at 3.)  Mrs. DeBiase states that the conclusion that she tripped over the

curb "was the conclusion of the investigator, not herself" (*id.* at 4) and that when

she questioned her former counsel about the investigator's conclusion, she

accepted her attorney's word that the investigator was very knowledgeable and that

it would not be an issue (*id.* at 3-4).  She states that she verified her interrogatory

responses based on her attorney's advice that it was fine to quote the investigator's

report.  (*Id.* at 8.)  In regard to her deposition testimony, Mrs. DeBiase states that

what she meant is that there are indeed  two hazards at the park – the curb and the

ground covers – but that she only tripped over one of them – the ground covers.

(*Id.* at 18-19.)  Mrs. DeBiase states that she did not realize until now the importance

of identifying what she tripped over.  (*Id.* at 4.)

## II.      STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party

bears the burden of demonstrating the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden

by pointing to an absence of evidence supporting an essential element as to which

the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).   An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the ... pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).  However, the underlying facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them.

*Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still,

"the mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; there must

be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*,

477 U.S. 242, 247-48 (1986).

## III.   DISCUSSION

Under Pennsylvania law, "[t]he mere occurrence of an accident does not

establish negligent conduct.[2]  *Martin v. Evans*, 711 A.2d 458, 502 (Pa. 1998).

Rather, "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a

duty of care; (2) the breach of the duty; (3) a causal connection between the

conduct and the resulting injury; and (4) actual loss or damage resulting to the

plaintiff." *Farabaugh v. Pa. Turnpike Com'n*, 911 A.2d 1264, 1272-73 (Pa. 2006).

"It is well-settled that the duty of a possessor of land toward a third party

entering the land depends upon whether the entrant is a trespasser, licensee, or

_____

[2] "[A] federal court must apply the substantive laws of its forum state in diversity actions," such as this one. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007).  Therefore, the Court will apply Pennsylvania law to this dispute.  In applying Pennsylvania law and in the absence of controlling authority from the Supreme Court of Pennsylvania, the Court must predict how the Supreme Court of Pennsylvania would resolve the questions posed in this case.  *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006).   Though not controlling, decisions from Pennsylvania's lower appellate courts are considered predictive, and in the absence of an indication otherwise, shall be accorded significant weight. *Id.*

invitee." *Cresswell v. End*, 831 A.2d 673, 675 (Pa. Super. Ct. 2003). An "invitee"

includes "a person who is invited to enter or remain on land for a purpose directly

or indirectly connected with business dealings with the possessor of the land." *Id.*

at 675-76 (quoting Restatement (Second) of Torts § 332 (1965)). A landowner has

a duty to protect an invitee not only against known dangers, but also against those

which might be discovered with reasonable care. *Gutteridge v. A.P. Green*

*Services, Inc.*, 804 A.2d 643, 656 (Pa. Super. Ct. 2002).

"A possessor of land is subject to liability for physical harm caused to his

invitees by a condition on the land if, but only if, he (a) knows or by the exercise of

reasonable care would discover the condition, and should realize that it involves an

unreasonable risk of harm to such invitees, and (b) should expect that they will not

discover or realize the danger, or will fail to protect themselves against it, and (c)

fails to exercise reasonable care to protect them against the danger." *Id.* (quoting

*Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 506 (Pa. Super. Ct. 1999) (en

banc), *appeal denied*, 764 A.2d 1071 (2001)). "Furthermore, it has long been the

law in Pennsylvania in 'fall-down' cases that the pedestrian has the burden of

proving the existence of a defective condition and the knowledge, actual or

constructive, of the real estate possessor of the condition prior to the accident."

*Kardibin v. Associated Hardware*, 426 A.2d 649, 652 (Pa. Super. Ct. 1981).

12

Here, Mrs. DeBiase clearly fits the definition of an invitee, and therefore, HE&R had the duty to exercise reasonable care to protect her against dangerous conditions of which HE&R knew or reasonably should have foreseen.  HE&R is entitled to summary judgment, however, because Mrs. DeBiase has not, and cannot, identify the dangerous condition that caused her injuries.

Mrs. DeBiase has variously identified two dangerous conditions that may have caused her fall:  four metal ground covers and a raised curb.  By admitting that she does not know which of these potential causes actually caused her fall, Mrs. DeBiase has failed to establish the required causal connection between HE&R's alleged negligence and her resulting injury.  Pennsylvania law is clear that a trip-and-fall case may not go to a jury where the plaintiff's evidence requires the jury to speculate as to which of multiple possible causes resulted in the plaintiff's injury. *See, e.g.*, *Houston v. Republican Athletic Ass'n*, 22 A.2d 715, 716 (Pa. 1941) ("Where a defendant is liable for only one or two or more equally probable causes and to say which is a mere guess, there can be no recovery."); *Cuthbert v. City of Philadelphia*, 209 A.2d 261, 263-64 (Pa. 1965) ("[I]t is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities, but he must eliminate those other causes, if any, as were fairly suggested by the evidence.  And it is the duty of

the trial court to determine whether or not this requirement has been met in the first

instance before the issue can be submitted to the jury."); *DuBois v. City of

Wilkes-Barre*, 189 A.2d 166, 167 (Pa. 1963) ("In order to establish liability in an

action of this nature, it is necessary for the plaintiff to prove what actually caused

the accident, not what might possibly have caused it. The jury cannot be allowed to

guess that the fall resulted from the existence of a foreign substance on the

sidewalk."); *Hopkins v. E.I. Dupont de Nemours & Co.*, 212 F.3d 623, 626 (3d

Cir. 1954) ("Where plaintiff thus leaves the jury to guess as between suggested

causes, there can be no recovery.").

Pennsylvania courts have consistently rejected trip-and-fall claims where the

plaintiff could not identify a cause of her injuries or merely identified possible

causes.  *See, e.g.*, *Freund v. Hyman*, 103 A.3d 658, 659 (Pa. 1954) (upholding

nonsuit where plaintiff knew where she fell and photograph showed raised piece of

sidewalk in that area, but where there was no evidence that plaintiff raised step

actually caused fall); *Dimino v. Wal-Mart Stores, Inc.*, 83 Pa. D&C 4th 169, 172-

73 (Pa. C.C.P. 2007) (granting summary judgment for defendant where plaintiff

testify she did not know what caused her slip-and-fall but relied on the fact that an

oily substance was on her shoe afterwards); *Gallagher v. Dalsania*, 82  D&C 4th

118, 126-27 (Pa. C.C.P. 2006) (upholding nonsuit where plaintiff identified several

possible causes of trip-and-fall and speculated as to actual cause); *Miller v. Twin Arches Ltd.*, 74 D&C 4th 449, 453-59(Pa. C.C.P. 2005) (granting summary judgment to defendant where plaintiff could identified two possible causes of slip-and-fall but did not present any evidence as to which, if either, was actual cause); *McNeil v. Ginsburg*, 28 D&C 4th 531, 534 (Pa. C.C.P. 1996) *aff'd* 683 A.2d 319 (Pa. Super. Ct. 1996) (upholding summary judgment for defendant where plaintiff was unaware of actual cause of slip-and-fall and circumstances indicated numerous possible causes); *Flocco v. City of Philadelphia*, 29 Phila. Co. Rptr. 1, 6-8 (Pa. C.C.P. 1994) (granting summary judgment for defendant where plaintiff showed that accident site was strewn with rocks and debris but presented no evidence that these conditions actually caused plaintiff to fall).

In this case, Mrs. DeBiase identifies two possible causes of her trip-and-fall, but admits that she does not know which is the actual cause.  Mrs. DeBiase argues that a jury should decide what caused her fall, but Pennsylvania law is clear that a jury may not simply speculate as to which of several possible causes, if any, actually resulted in a trip-and-fall injury.  Liability may not be imposed on HE&R merely because Mrs. DeBiase fell.  Mrs. DeBiase must present sufficient evidence to establish the cause of her fall without resort to mere speculation, and because she has not done so, HE&R is entitled to summary judgment.

In opposing summary judgment, Mrs. DeBiase now argues that she knows the ground covers were the sole cause of her injuries and that the Court should disregard her earlier statements that the raised curb caused her fall because this was not her conclusion but that her former attorney and her experts. The Court cannot accept Mrs. DeBiase's arguments for several reasons.

First, the Supreme Court has clearly stated that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also Boughner v. Secretary of Health, Education, and Welfare*, 572 F.2d 976, 978 (3d Cir. 1978) ("[G]enerally a party is deemed to be bound by the acts of his attorney."). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). Only in extraordinary circumstances of gross negligence by an attorney is a party excused from an adverse outcome that results from her attorney's act or omission. *See Boughner*, 572 F.2d at 978; *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240-42 (3d Cir. 1999). Here, the DeBiases are bound by their attorney's argument that the raised curb caused Mrs. DeBiase's fall. This case does not

16

present the type of extraordinary circumstances that warrant relief from this general

rule.  The DeBiases have suffered no penalty, such as dismissal or sanctions, but

rather have had their case considered on its merits.  But Mrs. DeBiase's argument

in this regard fails for another reason. On numerous occasions, Mrs. DeBiase

ratified her attorney's argument that the curb caused her fall. Accordingly, we are

unmoved by her attempt to place responsibility upon her now departed counsel.

    Thus, our second point is that the record clearly indicates that, in addition to

her attorney and experts, Mrs. DeBiase *herself* also argued herself that the curb

may have caused her fall and expressed doubt as to the actual cause.  Mrs. DeBiase

verified her answers to HE&R's interrogatories, which state that the curb caused

her fall.  (Def.'s Ex. F, Doc. 54-3 at 3, 12.)  Mrs. DeBiase claims that she did so

only on the advice of her former counsel. At her deposition, however, almost two

months after her counsel had been discharged, Mrs. DeBiase testified that she *did*

*not know* whether she tripped over the curb or ground covers, but was relying on

her investigator's conclusion that the curb caused her fall.  (Dep. of Patricia

DeBiase, Doc. 54-4 at 33:22-35:9.)  Mrs. DeBiase now argues that the deposition

questions where unclear, but she expressed no confusion during the deposition,

and the questions – excerpted fully above – exhibit no unclarity.  In her discovery

responses and deposition, Mrs. DeBiase adopted the position of her attorney and

her experts that the curb caused her fall.  Now in opposing summary judgment,

Mrs. DeBiase argues, to the contrary, that the ground covers caused her fall.

Perhaps all too candidly, Mrs. DeBiase admits that only in opposing HE&R's

motion did she realize the importance of identifying the cause of her fall.  (Pls.'

Opp. Br., Doc. 69 at 4.)  Mrs. DeBiase arguments, which are submitted only now

in opposing to summary judgment and which contradict her  prior testimony, do

not create a genuine issue of material fact that precludes summary judgment.

*Jiminez v. All American Rathskeller, Inc.*, --- F.3d ---, 2007 WL 2743431 at *5-6

(3d Cir. Sept. 21, 2007); *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.

1991).

        Finally, even if the Court were to accept her allegation that the ground covers

caused her fall, Mrs. DeBiase has failed to support this allegation with any

evidence.  "At summary judgment, a plaintiff cannot rely on unsupported

allegations, but must go beyond pleadings and provide some evidence that would

show that there exists a genuine issue for trial."  *Jones v. UPS*, 214 F.3d 402, 407

(3d Cir. 2000).  All of the evidence submitted in this case – the Plaintiffs'

depositions, the forensic investigator's report, the Plaintiffs' doctor's report, the

Defendant's expert report – points to a cause other than the one identified by Mrs.

DeBiase.  Even if she were permitted to change horses in midstream and argue that

the ground covers caused her fall, this conclusory allegation, which is completely contradicted by the evidence, would not preclude summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, HE&R's motion for summary judgment shall be granted.  An appropriate order shall issue.